**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RICHARD LONG,           )
                              )
Plaintiff,             )
                              )
       v.             )     Civil Action No. 2:19-1676
                              )     Judge Nora Barry Fischer
TOWLINE RIVER SERVICE, INC.,     )
                              )
Defendant.           )

**<u>MEMORANDUM OPINION</u>**

I.      INTRODUCTION

In this admiralty matter, Plaintiff Richard Long ("Long") brings claims against Defendant TowLine River Service, Inc. ("TowLine") under the Jones Act, 46 U.S.C. § 30104, for negligence and under the general maritime law for unseaworthiness, maintenance, and cure, arising from injuries he sustained on June 15, 2018 while working as a deckhand on the Motor Vessel Cori Weiland owned and operated by TowLine.[1]  (Docket No. 1).  TowLine previously filed a motion seeking to enforce a purported settlement by the parties at an ADR session which this Court denied, without prejudice, due to TowLine's improper reliance upon a Petition for Court Approval of Compromised Settlement of Seaman's Claim that its own counsel filed on behalf of Long in violation of the Court's CM/ECF Policies and Procedures and which has now been stricken from the record.  (Docket No. 87).

Presently before the Court are TowLine's Renewed Motion to Enforce Settlement, (Docket No. 90); its Brief in Support, (Docket No. 91); Long's Response, (Docket No. 97); TowLine's

---

[1]     This ADR dispute was referred to the undersigned Judge pursuant to the ADR Policies and Procedures.

Reply, (Docket No. 100); and Long's Sur-Reply, (Docket No. 103).  TowLine seeks to enforce an alleged oral settlement agreement to resolve this matter purportedly entered into during the ADR session and advocates that the Court permit discovery and conduct a hearing to both determine if an oral agreement exists and to approve the settlement.  (Docket Nos. 92; 100).  Long counters that there is no settlement to enforce as the procedures for settlement of a seaman's suit set forth in Local Rule 17.2 have not been met.  (Docket Nos. 97; 103).  After careful consideration of the parties' positions and for the following reasons, TowLine's motion [90] is DENIED.

## II.    BACKGROUND

Long is from Point Pleasant, West Virginia and is currently 38 years old.  (Docket No. 41).  He briefly worked for TowLine from March of 2018 until June 15, 2018.  (*Id.*).  As noted, Long was injured on June 15, 2018 while working on the Cori Weiland after he fell off a deck into the Ohio River.  (Docket No. 1).  The parties dispute the circumstances that led to Long's injuries and the scope of same.  (Docket Nos. 1; 6).  However, they agree that he received treatment by several medical providers which has been funded by TowLine through its obligations to provide maintenance and cure to Long as a seaman injured on the job.  (Docket Nos. 91; 97; 100; 103).  Additional points of contention between the parties include TowLine's assertions that Long ceased treatment for any injuries arising from this incident on August 27, 2020 and has achieved maximum medical improvement while Long believes that further follow-up with specialists is needed to confirm that his treatment is concluded, including for the head injury he allegedly sustained on the date in question.[2]  (*Id.*).

---

[2]     The Court notes that defense counsel Devon Ferris filed a consent motion to extend discovery and mediation on November 24, 2020 which states that "Mr. Long has not yet reached Maximum Medical Improvement and is currently undergoing physical therapy for his injuries" and that "[t]he parties believe that a full, complete and accurate understanding of Mr. Long's health and medical condition is crucial to an effective, productive, and meaningful mediation.  The requested extension may allow additional time for Mr. Long to reach Maximum Medical Improvement and facilitate the parties' mediation."  (Docket No. 27 at ¶¶ 11, 12).

Long filed his complaint with the assistance of his former counsel, Dennis O'Bryan, Esquire, ("O'Bryan").  (Docket No. 1). TowLine answered the complaint and has vigorously defended the claims, through its lawyers, Devon Ferris, Esquire, ("Ferris"), and Dennis Watson, Esquire, ("Watson"), who have appeared on its behalf throughout this litigation.  (Docket No. 6). After filing the required Rule 26(f) Report and ADR Stipulation, the attorneys appeared for an initial case management conference with Chief Magistrate Judge Eddy on February 26, 2020, at which time they were ordered to complete discovery by September 30, 2020 and ADR by June 18, 2020.  (Docket Nos. 12; 14; 15; 17).  Notably, the parties were directed to complete ADR, as they had agreed in their stipulation, which stated that they would mediate the case before former U.S. Magistrate Judge Kenneth J. Benson.  (Docket No. 17).  The case was stayed from April 2020 through July 2020 due to an unexpected health issue with counsel and an amended case management order entered on July 22, 2020 directed them to complete fact discovery by January 31, 2021 and ADR by November 30, 2020.  (Docket Nos. 18; 19; 21; 25).  Another extension was sought by the parties and granted by Judge Eddy, moving the discovery deadline to March 31, 2021 and ADR to January 31, 2021.  (Docket Nos. 27; 28).  As part of this Order, the parties were directed to file an updated ADR Stipulation but did not do so.  (*Id*.).  Instead, the parties proceeded to a mediation with Stephen Dalesio, Esquire ("Dalesio") on January 29, 2021.  (Docket No. 29).

The parties agree that a videoconference mediation was held with Dalesio on that date for approximately five- and one-half hours with all of the participants appearing remotely.  (Docket Nos. 91; 97; 100; 103).  TowLine asserts that the parties reached an oral settlement agreement at that time which is supported by the report of mediator; email correspondence between the lawyers and various attachments including a term sheet and release; email correspondence between Long and his former counsel and/or staff; and, statements purportedly made by Plaintiff's former counsel

in court filings.  (Docket Nos. 91; 100).  Long maintains that this proffered evidence does not show that a settlement was achieved.  (Docket Nos. 97; 103).

To that end, the report of mediator filed by Dalesio on January 29, 2021 states that a mediation session was held and he checked the box that the case "has resolved."  (Docket No. 29). In an email at 4:00 p.m. on the same day, defense counsel Ms. Ferris wrote to Plaintiff's former counsel, O'Bryan, the following:

> Mr. O'Bryan,
>
> Attached please find the Settlement Term Sheet that sets forth the terms of the settlement reached during our mediation today (January 29, 2021) with mediator Stephen Dalesio in the Richard Long v. TowLine River Service, Inc. matter.
>
> Please confirm your receipt and approval of the Term Sheet by "Replying All" to this email. As indicated in the Term Sheet, please confirm acceptance and approval of these settlement terms by 5:00 p.m. on Monday, February 1, 2021.
>
> Thank you and have a good weekend.
>
> Best,
>
> Devon
>
> Devon F. Ferris, Esquire

(Def. Ex. H, Docket No. 90-9 at 2).  The attachment reads:

### TERMS OF SETTLEMENT

> On Friday, January 29, 2021, the parties participated in a mediation with mediator Stephen J. Dalesio. At the conclusion of the mediation, the parties reached a settlement in the case filed in the United States District Court for the Western District of Pennsylvania at No. 2:19-cv-1767-CRE, subject to the following terms:
>
> 1. TowLine agrees to pay Long $xxxxxx in exchange for a full and complete release of all claims against TowLine;
>
> 2. Long executing a release in form and context agreeable to TowLine, including no admission of liability;
>
> 3. Long and his counsel both agreeing to a confidentiality clause in form and content agreeable to the TowLine;

4. Long and his counsel both agreeing to a non-disparagement clause in form and content agreeable to TowLine;

5. All liens against the settlement proceeds must be satisfied by Long from the settlement proceeds with Long agreeing to indemnify and hold TowLine harmless from any lienholder claims, including attorneys' fees;

6. The release must include Medicare set-aside language in form and content agreeable to TowLine (TowLine assumes that there will not be any set aside);

7. Long resigns from the employment of TowLine;

8. Long agrees never to seek employment with TowLine, its affiliates, or any company owned or operated by John Fedkoe;

9. Long must obtain court approval of the settlement in accordance with the Local Rules of the United States District Court of Western Pennsylvania, with the motion and supporting documents filed under seal;

10. TowLine agrees to continue to pay Long maintenance and cure through the date of court approval of the settlement;

11. All mediation fees shall be divided equally between Long and TowLine, and;

12. Long agrees to acknowledge acceptance and approval of this Settlement Term Sheet by 5:00 p.m. on Monday, February 1, 2021.

(Def. Ex. I, Docket No. 90-10 at 1-3 (redaction in original)).  There are no signature lines on the Terms of Settlement document and it has never been signed by Long, any representative(s) of TowLine, the involved lawyers from either side nor the mediator.  (*Id*.).  On Monday, February 1, 2021 at 7:41 a.m.  O'Bryan "replied all" to the email from Ferris, copying her co-counsel Watson and the mediator Dalesio, with a one-line answer stating only "approve."  (Def. Ex. J, Docket No. 90-11).   As such, this email does not specify whether Long himself acknowledged acceptance and approval of the term sheet or if O'Bryan had even consulted with Long about the salient terms over the weekend.   (*See id*.).

One week later, on February 8, 2021, at 12:44 PM, Ferris sent another email to O'Bryan:

Hi Dennis [O'Bryan],

Attached are the following documents pertaining to the Long settlement for your review:

1. Release of All Rights

2. Motion for Leave to File Documents Under Seal

3. Proposed Order - Motion for Leave to File Documents Under Seal

4. Petition for Court Approval of Settlement

5. Proposed Order – Petition for Court Approval of Settlement

Please let me know if you have any proposed revisions. Also, if you could please confirm how you would like the settlement check made out, that would be great. Sometimes the check is payable to you directly, other times it is payable to your firm.

Finally, I spoke with Judge Eddy's chambers and it looks like February 23rd is a good date for her for the settlement hearing, but she wants us to file our documents before she sets the hearing date. I've put a hold on my calendar for the morning of Feb. 23 just in case.

Feel free to give me a call to discuss:

Devon

Devon F. Ferris, Esquire

(Def. Ex. K, Docket No. 90-12 at 2).  O'Bryan did not respond directly to this email.  Rather, he

sent an email to an employee of his law firm, Maddie Karam, at 1:31 PM which stated "Looks

good" and "Sending to client to sign."  (*Id*. at 4).  Karam then forwarded this email to Ferris at

2:41 PM stating "Devon, Please see the below email from Dennis, stating that the release looks

fine.  Also please see the attached costs, per Dennis.   Please don't hesitate to contact me if you

have any issues accessing the attachment." (*Id*. at 4).  The Release of All Rights is a 20-page

document containing forty paragraphs and numerous subparagraphs as well as Appendices A

through C.  (Docket No. 41, Def. Ex. 7).   The Release and its Appendices have four separate

signature lines for Long and one for O'Bryan as his counsel but none of these areas have been

executed by them.  (*Id*.).

Among other things, the unsigned Release of All Rights: contains expansive language releasing all potential claims Long either asserted in his Complaint or may have asserted against TowLine, as listed in 26 subparagraphs (a) through (v); sets forth the financial terms of the agreement; details medical treatment that Long has received and notes that "[a]s of August 27, 2020, LONG's treating physicians have determined he reached maximum medical improvement for the injuries allegedly sustained on or about June 15, 2018.  Since August 27, 2020, LONG has not sought treatment for any injuries allegedly sustained on or about June 15, 2018"; states that Long agrees, acknowledges and understands the information in Appendices A-C; and, that he "agrees and acknowledges that payment of any sums to him … is expressly conditioned upon a judge of the United States District Court for the Western District of Pennsylvania, after hearing conducted pursuant to Local Rule of Civil Procedure 17.2, entering a final order …. [a]pproving the terms of this settlement and this RELEASE OF ALL RIGHTS."  (Docket No. 41, Def. Ex. 7).

It is undisputed that defense counsel Ferris prepared all of the documents attached to her emails including: the Terms of Settlement; Release of All Rights; Motion for Leave to File Document Under Seal and Proposed Order; and Petition for Court Approval of Settlement and Proposed Order.   (Docket No. 90-12, Def. Ex. K).   However, there have been no email communications or other evidence presented beyond the initial emails with O'Bryan stating that he agreed with her filing documents on the Court's CM/ECF System or electronically signing documents on his behalf.  There is likewise no evidence that Long concurred with defense counsel filing a document on Long's behalf.  As noted above, the previously filed Petition for Court Approval of Settlement has been stricken from the record for violating the Court's CM/ECF Policies and Procedures because defense counsel Ferris filed the document under a purported electronic signature of O'Bryan.  (Docket No. 87).

The record contains emails and other correspondence between Long, O'Bryan and/or his staff members during February and early March of 2021.[3]  (Def. Ex F, Docket No. 90-7).  In an email dated February 12, 2021, Cosimo A. D'Aleo of O'Bryan's Office wrote:

> Richard,
>
> I was happy to hear that the case settled while I was out on vacation.  I tried calling you several times today, calling each number I have on file.
> Please call me back at the office, because I want to ensure that you have the release, and have signed and sent it back to us. Contact me ASAP.  Thank you.

(Docket No. 90-7 at 7-8).  Approximately one week later, Long commenced sending lengthy email communications to D'Aleo and/or O'Bryan generally discussing the release and outlining the problems he saw with the mediation process and the settlement negotiations.  (Def. Ex F, Docket No. 90-7).  The emails reveal that his primary complaints include his disputing the release provision indicating that he had achieved maximum medical improvement for his injuries when he was still experiencing residual problems and he also contested that the attorneys were seeking to have him sign the release and have it notarized when he believed he would have additional time to attend follow-up medical appointments including with a neurologist, to obtain an opinion as to the status of his injuries.  (*Id*.).  To that end, on February 20, 2021, Long complains to D'Aleo that the release language "doesn't line up with what" he had told O'Bryan about the current status of his medical conditions and that he would not resolve the matter without first seeing a neurologist at an upcoming appointment and to have further follow up concerning his shoulder injury.  (Docket No. 90-7 at 14).  Long continues that he:

> [has] to have time and/or an updated document stating that they will continue to pay my medical bills until the Dr. States that it [is] as

---

[3]      The Court notes that Plaintiff filed a notice on April 9, 2021 stating that Long "waive[d] his attorney-client privilege for the limited purposes of determining whether [he] agreed to the alleged settlement agreement."  (Docket No. 68).

good as it is going to be. Which is all Legal and the rights that the Law gives me. Unless I sign it away. And, I won't sign my rights away until he completes any and all treatments and or surgeries that Dr. Wants me to do. And, anything that could make my shoulder and things as good as they are going to get. I will let you know what the neurologist says on. Wed. March 3rd. And then when I see my ortho doctor and see what he wants to do. Maybe something or maybe nothing. That's up to him and not TowLines Lawyers. If they have any problems with this then they can talk to Dennis because like [I] said before the document states they have treated and paid for all medical care fully and I'm as good as I'm going to be. Which is completely false and not true. Dennis knows I still have appointments and my Dr. Is not done with my healing. And trying to make it better. So, they can take that up with Dennis and the Law. Just saying those are my rights and what is required of TowLine until my injury is as good as it going to be. So. Please know that's why I have not signed it and with the statements in it as of now I won't until my healthcare is TRULY complete. I Will have a life to live after this and need my shoulder the best that it can be. Also, tell Dennis [I've] been looking for some kind of work but no one can hardly use me even jn a fast food restaurant because [I] can't even lift anything unless using only one arm. Or raising my up to even clean windows basically anything. But [I] am trying so he can relay the information to whoever needs to know that. I don't think anyone other than my family or my doctor realizes how bad my Arm is. So, that was all I had to let you know. And, again will let you know what the neurologist says after my appt. They are just going to have to be patient awhile longer. Or not. Its up to them. But I won't sign away my rights under the Law.

(Docket No. 90-7 at 14 (uncorrected errors in original)).[4]  Long sent two emails the next day, February 21, 2021, reiterating that he felt he was pressured into the settlement agreement and was misled by O'Bryan who had told him that he would have time to attend the doctor appointments before a court hearing was held on any settlement but the lawyers were pressuring him to sign and

---

[4]    Long expressed similar sentiments in comments he made in reference to an undated social security form he was asked to fill out as part of the settlement process. (Docket No. 90-7 at 15 ("I'm confused why they want this. I'm not applying for SSA, so if that's what this is, let me know. PT said I'll never be able to work on river again along with doctor, only thing left they can do is see if neurologist can do surgery to help, but basically said I'll never work any type of physical labor again. And with head, vision, eye degenerative injuries they are not sure what I will do. But, I will never give up. And, will never file SSA. I want to work. Whether they pay my schooling or all future wage loss and past, etc. Dennis, you know I'm very serious. I will not settle unless they offer me something to set me for life. Why? Because I have every doctor and PT on my side with this. It's that simple.")).

notarize the release prior to those appointments.   (Docket No. 90-7 at 11-12).  Long states that the mediation was a "hoax" and that TowLine was trying to "railroad" him.  (*Id*.).  He also mentions the word "recording" in both emails although it is unclear from these emails whether he was using the word colloquially to describe the videoconferencing which was used during the mediation; notes he had taken himself during the session; or, if he had actually recorded some portions of the videoconference mediation.[5]  (*Id*.).

A few days later, on February 23, 2021, Long wrote again to D'Aleo complaining that he had been sending messages to the firm but no one had responded to him.  (Docket No. 90-7 at 7).  He states that he "feel[s] like he is getting screwed" and the settlement is making him "sick at [his] stomach" to take the settlement because he cannot find anyone to employ him because of the condition of his arm including "not even [d]ang fast food place."  (Docket No. 90-7 at 7).  He adds that the settlement is not fair, states that he has more surgeries coming up and asks that someone call him back.  (*Id*.).  About an hour later, Long sends another email to D'Aleo asking "[i]f I sign the documents now, and forget about all the other BS WHICH IT IS.  [H]ow long until I get the check […] [t]hat's owed to me." (Docket No. 90-7 at 9 (errors in original)).   Another hour passed and Long again emailed O'Bryan noting that he was "just going to sign these papers and send them back to you.  But I know it will still be a little but before I get my settlement check.  Don't pay no attention to me ranting to Cosmo [D'Aleo] I do it all the time."  (Docket No. 90-7 at 2).  Long adds that Globin Financial had forwarded an email to O'Bryan concerning a potential loan of $2,000-$3,000 that he had applied for against the settlement and was asking for O'Bryan to respond that

---

[5]     The Court notes that § 6.E.2. of the ADR Policies and Procedures provides that "[n]o one shall make any recording or transcript of any ADR session or proceeding without the prior written consent of all parties and other person participating in the ADR session."  *See U.S. District Court for the Western District of Pennsylvania*, ADR Policies and Procedures, § 6.E.2., *available at:* https://www.pawd.uscourts.gov/sites/pawd/files/ADR_Policies_and_Procedures_21.pdf (effective 1/2/2019).  As Chief Magistrate Judge Eddy advised the parties at a telephone status conference, if any recording of the mediation was made, it was in violation of the Rules and would not be admissible in evidence.  (Docket No. 85 at 9-10).

email "ASAP" so that he could obtain the loan.  (*Id.*).  Long states that he "will have the settlement papers sent out this week" and that he "just want[s] to get this over with."  (*Id.*).

Shortly after midnight on the next day, February 24, 2021, Long sent an email to O'Bryan advising that he "wanted you to know that I'm getting [a] second opinion on my case" due to "the fact that everyone is in [a] hurry for me to sign the settlement before my medical care is even complete.  I believe I [need] a second opinion."  (*Id*. at 6).  He continues "[w]e will speak later.  But, [there] will be someone looking into my case and what my best options are.  I hope you understand as I'm sure you would do the same in my position. […] You are still my lawyer I just want a second opinion before I sign anything.  I hope you understand my predicament and I just need to know I am doing the right thing."  (*Id*.).  O'Bryan responded to the email at 8:20 a.m. that morning stating that he had tried to call but no one picked up the phone call.  (*Id*. at 6).

A few days later, on February 27, 2021, Long emailed O'Bryan again expressing disappointment that he had not signed off on the potential loan with Globin but had instead directed him to sign the settlement papers in this action.  (Docket No. 90-7 at 4-5).  Long complained, among other things, that "Dennis you told me a month ago that as soon as we had a settlement offer that you would sign off so I could get a small loan off of it.  Are you really not going to approve me a loan just [because] I am signing away my rights to finish my Healthcare before I sign the settlement agreement?  No one in their right mind or anyone who knows their rights under the law would sign away their rights under the Jones Act Law to make sure that the defendant/company was made responsible again by my rights under the law to finish paying for my Healthcare and surgeries still yet to be completed."  (*Id*.).  O'Bryan responded the next day, stating "I expect there to be a federal court hearing soon scheduled arising out of the federal court

ordered five and a half hour mediation at which mediation you settled the case; at the hearing it can be explained why or why not the case is settled." (*Id*. at 4).

Separately, defense counsel was busy making submissions to the Court.  In this regard, on February 8, 2021, a Joint Motion for Leave to File Documents Under Seal was filed by TowLine seeking an Order sealing the petition for court approval, its attachments and the transcript of any hearing.  (Docket No. 31).  A few days later, on February 11, 2021, Chief Magistrate Judge Eddy denied the motion, finding that the justification provided for the requested order sealing the entire petition and attachments was insufficient, citing *Singleton v. PharmaTech, LLC*, No. CV 17-921, 2020 WL 7769835, at *7 (W.D. Pa. Dec. 30, 2020) and *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 924 F.3d 662, 672 (3d Cir. 2019).  A Joint Motion for Reconsideration was submitted on February 25, 2021 which was granted, in part, by Chief Magistrate Judge Eddy, and required the petition to be filed publicly but authorized sealing of the proposed release; settlement distribution sheet; and Plaintiff's medical records.  (Docket Nos. 37; 38).

As noted above, the Petition filed by defense counsel Ferris on March 5, 2021 was stricken from the record as it was filed in violation of the Court's CM/ECF Policies and Procedures. (Docket No. 87).  A videoconference motion hearing was initially set on the Petition before Chief Magistrate Judge Eddy on March 24, 2021. (Docket No. 40).  However, on March 15, 2021, Brian Beckom, Esq. sent a letter to O'Bryan:

> Please be advised that Richard Long has terminated your services effective immediately and retained our firm in connection with all injuries he sustained in connection with his incident with TowLine River Service, Inc. that occurred on or about June 15, 2018.
>
> …
>
> We are aware that there is an upcoming hearing regarding Mr. Long's alleged "seaman's release."  Please be advised that Mr.

> Long has not given authority to enter into any settlement or release.
> Any authority you believe exists is explicitly withdrawn.

(Docket No. 42-3). Upon receiving this letter from Beckom, O'Bryan proceeded to file a motion

to withdraw as counsel and a motion to withdraw the petition for settlement. (Docket Nos. 40; 48;

50). Consequently, Chief Magistrate Judge Eddy entered an order cancelling the previously

scheduled motion hearing. (Docket No. 46).

As to additional evidence, Long electronically signed an Affidavit dated March 30, 2021

attesting to all of the following:

> 1. I have personal knowledge of the things and matters set forth in this Affidavit.
>
> 2. I did not personally sign or otherwise agree to settle my Jones Act suit against TowLine River Service, Inc.
>
> 3. I was never informed of my rights as a seaman prior to allegedly agreeing to a settlement of my Jones Act suit against TowLine River Service, Inc.
>
> 4. I did not instruct Dennis O'Bryan, my former attorney, to settle my case.
>
> 5. I did not instruct Dennis O'Bryan, my former attorney, to file a Petition that would enforce the settlement agreement that I did not consent to.
>
> 6. I do not give my consent for my Jones Act suit against TowLine River Service, Inc. to settle at this time.
>
> 7. I will give this same testimony under oath if such testimony is required by this Court.

(Docket No. 62 at 2). O'Bryan likewise states in his verified brief in support of the motion to

withdraw the petition that:

> Vis-a-vis mutual mistake(s), the joint Motion for Settlement of Compromised Seaman's Suit and/or supporting documents drafted and filed by TowLine River Service, Inc., (Dkt 39) contains material factual contentions without evidentiary support. The underlying

> PROPOSED RELEASE OF ALL RIGHTS states at No. 22 that
> "LONG'S health care providers have concluded that LONG has
> reached MMI." (See Dkt 39, Exhibit 7). Most importantly, the
> proposed ORDER OF COURT (Dkt 39-1) states that it appears the
> Plaintiff's "physical ailments from which he suffers are permanent
> in nature," and orders, in part, the total fiction that "Richard Long
> has achieved maximum cure for the June 15, 2018 injuries described
> in Long's Petition for Approval and the Release of All Rights." To
> the contrary, there is no evidentiary support for the statements that
> Richard Long has achieved maximum cure or MMI.

(Docket No. 70 at 1-2).    The record also contains correspondence from maritime claims

administrator Sea West dated March 12, 2020 and May 6, 2020 authorizing Plaintiff to have a

neurological consult pertaining to his right shoulder condition.  (Docket No. 70-1 at 2-3).  Counsel

for the parties agreed at a telephone status conference before this Court that the neurological

consult has not taken place and that discovery as to Plaintiff's admiralty claims and complete

medical history has not yet been completed given the mediation process and ongoing disputes as

to same.    (*See* Docket No. 84).

    As noted above, TowLine's motion has been fully briefed and is now ripe for disposition.

### III.    LEGAL STANDARDS

    A motion to enforce settlement is analyzed under the same standard as a motion for

summary judgment because the central issue is whether there is any disputed issue of material fact

as to the validity of the settlement agreement.  *Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 & n. 5

(3d Cir. 1991).  "This is not a mere coincidence.  The stakes in summary enforcement of a

settlement agreement and summary judgment on the merits of a claim are roughly the same – both

deprive a party of his right to be heard in the litigation."  *Id.*  Therefore, the Court must "view the

facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that

party's favor."  *Andreoli v. Gates,* 482 F.3d 641, 647 (3d Cir. 2007).  The Court "shall grant

summary [enforcement] if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to [enforcement] as a matter of law." Fed. R. Civ. P. 56(a). *See also Pearson v. Prison Health Svc.*, 850 F.3d 526 (3d Cir. 2017) ("Material facts are those that affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." (internal marks and citations omitted)). If there are material disputes between the parties as to the existence or terms of a settlement agreement, the Court should afford the parties an evidentiary hearing before summarily enforcing a settlement agreement. *Tedesco Mfg. Co., Inc. v. Honeywell Intern., Inc.*, 371 F. App'x 316, 319 (3d Cir. 2010) (citing *Saudi Basic Ind. Corp. v. Exxon Corp.*, 364 F.3d 106, 113 (3d Cir. 2004)).

## IV.     DISCUSSION

TowLine once again seeks to enforce an oral settlement agreement allegedly entered into by the parties during a January 29, 2021 ADR session. (Docket Nos. 90; 91; 100). In the order accompanying its renewed motion, TowLine asks the Court to do all of the following: lift the stay on discovery regarding the purported oral settlement agreement; hold an evidentiary hearing; direct Plaintiff to execute the proposed release; approve the parties' purported settlement; authorize payments to Plaintiff and his former counsel to settle the matter; and, close the case. (Docket No. 90-1). Long counters that TowLine's motion should be denied, without further proceedings, as the purported settlement was not judicially approved as required under Local Rule 17.2 and TowLine has otherwise failed to meet its burden to demonstrate that any of the relief it seeks should be ordered by the Court. (Docket Nos. 97; 103). Having considered the parties' arguments in light of the evidence of record, the Court finds that TowLine's motion is without merit and that discovery, an evidentiary hearing and any other further proceedings are not necessary to resolve this matter.

A. *Alleged Law of the Case*

Before addressing the merits of the parties' disputes, the Court first turns to TowLine's assertions in its Reply that it should be permitted to conduct discovery (including written discovery, document production, and depositions) as to the purported oral settlement agreement under Chief Magistrate Judge Eddy's prior rulings and the law of the case doctrine. (Docket No. 100). The Court disagrees.

At the outset, the law of the case doctrine is "a judicial rule of practice meant to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (quoting 18 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4478 (2d ed.)). However, the law of the case doctrine "'does not limit the power of trial judges to reconsider their [own] prior decisions,'" *Petratos*, 855 F.3d at 493 (quoting *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)), nor does it "'limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court.'" *Petratos*, 855 F.3d at 493 (quoting *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994). As such, this Court is simply not bound by any prior rulings by Chief Magistrate Judge Eddy and has considerable discretion to handle the matters related to the disputes which have been referred to it for a decision.

Next, TowLine misinterprets the Orders entered by Chief Magistrate Judge Eddy and overlooks the Order issued by this Court to the extent that the company argues that the proceedings must be bifurcated to: (1) permit discovery as to the disputed existence of an oral settlement agreement and resolution of that issue; and (2) if the Court determines that a settlement agreement exists, follow the Local Rule 17.2 procedures for approval of the settlement. (Docket No. 100). To the contrary, Chief Magistrate Judge Eddy's Orders clearly state that discovery was stayed

given the numerous disputes between the parties including the assertions of attorney-client privilege by both parties. (Docket Nos. 76; 81). Further, the motion to enforce the settlement as well as the attendant discovery disputes were referred to this Court under the ADR Policies and Procedures. (Docket Nos. 82; 84). The procedures initially established by Chief Magistrate Judge Eddy were also put in place because a petition to approve the settlement was pending at that time, but it was subsequently stricken for defense counsel's violation of the Local Rules. (Docket No. 87). Regardless, this Court's Order of May 26, 2021 denying the previously filed motion to enforce settlement expressly noted that "this Court will address what it believes is the threshold issue of Plaintiff's legal objection asserting that the settlement cannot be enforced under Local Rule 17.2 prior to lifting the stay of discovery (written or deposition) or convening a hearing in this matter." (Docket No. 87 at 3). Therefore, if any judicial decision constitutes the "law of the case" here, it is this Court's ruling that Long's objections under Local Rule 17.2 must be addressed before wading into the numerous discovery disputes or conducting any type of hearing on the matter. *See Petratos*, 855 F.3d at 493. The Court also believes that ruling on the briefs without conducting an evidentiary hearing to resolve immaterial disputes between the parties is necessary to "secure the just, speedy and inexpensive determination" of the matter. *See* Fed. R. Civ. P. 1. Accordingly, TowLine's position that this Court is bound to permit discovery and convene a hearing based on the law of the case doctrine is overruled.

 *B. Merits*

  Moving on to the merits, the Court has carefully considered the parties' arguments in light of the relevant precedent and the facts of record and concludes that TowLine has simply failed to meet its burden to demonstrate that there are no genuine disputes of material fact and that it is

entitled to enforcement of an oral settlement agreement allegedly reached during the January 29, 2021 mediation.  (See Docket Nos. 90; 91; 97; 100; 103).  The Court's rationale follows.

It is well-established that seaman are "wards of admiralty" and have historically been granted significant protections under the law.  *See Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 417 (2009).  "Although they are not technically incapable of entering into a valid contract, the courts of equity treat [seaman]in the same manner as these courts treat wards in dealing with their guardians." *Irons v. Matthews*, Civ. A. No. 04-4825, 2010 WL 2540347, at *3-4 (D.N.J. June 15, 2010) (citing *Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 246, 63 S.Ct. 246, 87 L.Ed. 239 (1942)). The protections afforded to seaman are embodied in Local Rule 17.2 of the Local Rules of Western District of Pennsylvania which require judicial approval of all settlements of a seaman's claims upon: the filing of a detailed petition verified by the seaman's attorney; the appearance of the seaman in open court; an examination of the seaman by the Court under oath; and, findings by the Court that the seaman's rights are fully protected and that he understands the terms of the settlement.  *See* W.D. Pa. LCvR 17.2(A)-(D).

The most relevant precedent interpreting the Local Rules is *Christopher v. Campbell Transportation Company*, Civ. A. No. 2:96-2321, *report and recommendation*, Docket No. 21 (W.D. Pa. Jul. 29, 1997) (Sensenich, M.J.), *adopted as opinion of court*, Docket No. 27 (W.D. Pa. Aug. 25, 1997) (Lee, D.J.).  In *Christopher*, the late Hon. Donald J. Lee denied a motion for summary judgment and a corresponding motion for enforcement of a settlement agreement brought by a shipowner against a seaman who had executed a release while his lawsuit was pending but had not presented it for approval to the Court.  *Id.*  Although the seaman was represented by counsel in the lawsuit, he had executed the settlement agreement after meeting with a

18

representative of the shipowner without his lawyer present.  *Id*.  In denying the motion for summary judgment seeking to enforce the release, Judge Lee held:

> Local Rule 17.2 of this Court requires that any settlement of a suit in admiralty or civil action to which a seaman is a party be approved by the Court pursuant to a petition presented by his attorney.  Since Plaintiff's complaint was filed before the Release was executed, any settlement must be approved by the Court.  The Court is required to conduct a hearing in open court for consideration of the petition and the seaman is required to be present.  Since no petition has been presented and no hearing has been conducted, Defendant's Motion for Summary Judgment must be denied on this ground.

*Id*.

The same is true here.  It is undisputed that the purported oral settlement agreement from the January 29, 2021 ADR session took place during the pendency of this case but that none of the settlement procedures for seaman suits set forth in Local Rule 17.2 have been satisfied.  (Docket Nos. 90; 91; 97; 103).  To that end, even if an oral settlement agreement was reached during the mediation, none of the following have occurred: a verified petition has not been filed by Long's attorney along with an executed release, if any, and the other matters required under Local Rule 17.2(B); Long has not appeared in open court, been placed under oath and questioned about his understanding of his rights as a seaman and the terms of the settlement; and, the Court has not approved the settlement.  The Local Rules clearly state that "[n]o suit in admiralty or civil action to which a seaman is a party shall be compromised, settled, discontinued or amicably or voluntarily dismissed except after approval by the Court pursuant to a petition presented by the seaman's attorney and upon payment to the Clerk of Court of the filing fee."  W.D. Pa. LCvR 17.2(A).  As in *Christopher*, this Court cannot summarily enforce an alleged oral settlement agreement in a case involving claims brought by a seaman that has not been judicially approved under Local Rule 17.2.

*See Christopher*, Civ. A. No. 2:96-2321, *supra*.  Accordingly, TowLine's motion must be denied to the extent that it seeks summary enforcement of the alleged oral settlement agreement.

The Court also alternatively holds that, even if Local Rule 17.2 did not preclude summary enforcement of the alleged oral settlement agreement, TowLine has failed to meet its burden to demonstrate that there are no genuine disputes of material fact and that it is entitled to enforcement of same.

Initially, for purposes of this motion, the Court assumes, without deciding, that an oral agreement to settle an admiralty action brought by a seaman may be validly entered into by the parties. [6]   *See e.g., Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961) ("oral contracts are generally regarded as valid by maritime law.").   Yet, as the moving party, TowLine carries the burden to prove that all of the essential terms of an oral contract have been met. That is, to establish the formation of an oral settlement agreement, TowLine must demonstrate by a preponderance of the evidence that there was "an offer and acceptance of the compromise and a meeting of the minds as to the essential terms of the agreement." *El Paso Prod. GOM, Inc. v. Smith*, No. CV 04-2121, 2008 WL 11509113, at *9-11 (E.D. La. Mar. 5, 2008), *report and recommendation adopted*, No. CV 04-2121, 2008 WL 11509111 (E.D. La. July 1, 2008) (citations omitted).   "[T]he test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel*

---

[6]       The Court notes that Local Civil Rule 17.2(B) titled "Contents of Petition" states that a "copy of the release, if any, signed or to be signed by the seaman" should be provided to the Court as part of the verified petition for approval of a settlement of claims involving a seaman.   *See* W.D. Pa. LCvR 17.2(B).   The Local Rule does not expressly address the validity of an oral agreement to settle a seaman's claims.   *See id.*   However, in this Court's experience presiding over seaman's settlement petitions during the past 14 and ½ years on this Bench, the attorney for the plaintiff generally includes a release along with the other matters listed as required under Local Rule 17.2(B), i.e., "1. a statement of the essential facts relating to liability; 2. the elements of claimed damage, including a statement of amounts already paid to or on behalf of the seaman; 3. a statement of services rendered by counsel; 4. the expenses incurred or to be incurred by counsel; […] 5. the amount of fees and expenses requested by counsel" and "copies of written statements of those physicians who have treated or examined the seaman setting forth the nature of the injuries and the extent of recovery." *Id.*

*Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298-299 (3d Cir. 1986) (emphasis added).  "It is hornbook law that evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract." *Id*. at 298.  The offeror is the master of his offer and may specify how the offer may be accepted and by whom, and if a deadline is established, the "offeree's power of acceptance terminates at the deadline specified in the offer." *Hrapczynski v. Bristlecone, Inc.*, No. 20-CV-06014, 2021 WL 3209852, at *5 (E.D. Pa. July 29, 2021) (citing Restatement (Second) of Contracts § 41(1) (1981); 1 Richard A. Lord, Williston on Contracts § 5:5 (4th ed. 2021)); *see also Van Schoiack v. U.S. Liab. Ins. Co.*, 133 A.2d 509, 514 (Pa. 1957) ("It is settled law that the offeror is the master of his offer, and his provision as to time, place and manner or mode of acceptance.").

In this Court's estimation, TowLine has failed to carry its burden to demonstrate that an enforceable oral agreement to settle this lawsuit was achieved at the January 29, 2021 videoconference mediation session.  TowLine argues that the purported oral settlement agreement is evidenced by the unsigned settlement term sheet; subsequent email communications between counsel; and other evidence post-dating the ADR session.  (Docket Nos. 90; 91; 100).  However, the Court believes that the language of the term sheet drafted by TowLine's counsel plainly undermines its position that an enforceable oral agreement was reached during the mediation.

Although the term sheet states that a settlement was reached, it further provides that the agreement was "subject to" a number of terms, including, among other things, that "Long agrees to acknowledge acceptance and approval of this Settlement Term Sheet by 5:00 p.m. on Monday, February 1, 2021." (Docket No. 90-10 at ¶ 12).  At most, this language proves that TowLine made an offer at the mediation because the term sheet expressly creates the power of acceptance in the offeree, Long and establishes a deadline for his acceptance a few days after the videoconference

mediation session.  *See e.g.*, *Channel Home Centers*, 795 F.2d at 298; Restatement (Second) of Contracts § 41, cmt. d (1981) ("Where the parties bargain face to face or over the telephone, the time for acceptance does not ordinarily extend beyond the end of the conversation unless a contrary intention is indicated. A contrary intention may be indicated either by express words or by the circumstances. For example, the delivery of a written offer to the offeree […] may indicate that a delayed acceptance is invited.").  Ferris' corresponding email to O'Bryan forwarding the term sheet similarly asks him to confirm acceptance of "these settlement terms" by February 1, 2021, again showing that neither party had fully agreed to be bound by an oral agreement at the videoconference ADR session. (Docket No. 90-9 at 2).  In his declaration, Long states that he "did not personally sign or otherwise agree to settle my Jones Act suit against TowLine River Service, Inc." (Docket No. 62 at ¶ 2).  Since there is no evidence before this Court that both TowLine and Long expressed a present intent to be bound by the purported oral settlement agreement on January 29, 2021, there was no meeting of the minds on all of the essential terms necessary to form a binding oral agreement at that time. *See Cawthorne v. Erie Ins. Grp.*, 782 A.2d 1037, 1038–39 (Pa. Super. Ct. 2001) (citation omitted) ("Basic contract law directs that in order to constitute a contract there must be an offer on one side and an acceptance on the other. Until accepted in the mode and manner expressly provided by the terms of the offer, there remains an unaccepted offer which cannot, in itself, be considered a binding contract.").  Therefore, TowLine's motion must be denied to the extent that it seeks to enforce an alleged oral settlement agreement from the mediation since a binding agreement was not created by the parties.

While the Court's analysis may end here, there are several additional reasons why TowLine's motion seeking to enforce an alleged oral agreement by Long to settle his case and

release his claims against TowLine must be denied.  To that end, a seaman's release is subject to careful scrutiny.  *Irons v. Matthews*, 2010 WL 2540347, at *3 (D.N.J. June. 15, 2010).

> [O]n a motion for summary judgment based on a seaman's release, the shipowner has [a] heavy "'burden to shoulder, for he must conclusively demonstrate the absence of genuine issues of material fact.'"  *Irons v. Matthews*, 2010 WL 2540347, at *4 (D.N.J. 2010) (quoting *Halliburton v. Ocean Drilling & Exploration Co.*, 620 F.2d 444, 445 (5th Cir. 1980)). As a result, "[i]n the context of admiralty jurisdiction, summary judgment is often considered an inappropriate procedure to determine the validity of a seaman's release." *Id.* (citing *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 39 (3d Cir. 1980)).

*Greene v. Sea Harvest, Inc.*, No. 1:17-CV-04104-NLH-JS, 2018 WL 1027542, at *4 (D.N.J. Feb. 23, 2018).  Courts in admiralty actions generally employ:

> "a two-part test to determine the enforceability of a seaman's release. First, a court must determine whether the release was executed freely, without deception or coercion. Second, a court must examine whether the seaman entered the settlement with a full understanding of his rights. The adequacy of consideration and the nature of the medical and legal advice available to the seaman are key issues in the analysis of this understanding."

*Greene*, 2018 WL 1027542 at *3 (quoting *Jackson v. Delaware River and Bay Authority*, 334 F. Supp. 2d 615, 617-18 (D.N.J. 2004)).  Finally, the U.S. Court of Appeals for the Third Circuit has recognized that Pennsylvania law requires express authority for an attorney to settle a client's case.

*See Tiernan v. Devoe*, 923 F.2d 1024, 1032 (3d Cir. 1991) (state law applicable on federal claim to decide authority of attorney to settle claim); *see also Baribault v. Zoning Hearing Bd. of Haverford Twp.*, 236 A.3d 112, 122 (Pa. Commw. Ct. 2020), *appeal denied*, 256 A.3d 420 (Pa. 2021) (citations omitted) ("Before an attorney may agree to a settlement, he must have actual authority to settle from his clients. The ordinary employment of an attorney to represent a client with respect to litigation does not confer upon the attorney the implied or apparent authority to

bind the client to a settlement or compromise, and the attorney cannot do so in the absence of such express authority.").

Following these standards, it is this Court's opinion that TowLine has not met its heavy burden to demonstrate that Long's alleged oral settlement and corresponding release of his claims in this admiralty case are enforceable because TowLine has not shown that any alleged oral agreement was entered into by Long voluntarily and with a full understanding of his rights as a seaman.

In this regard, the evidence before the Court shows that TowLine extended Long an offer at the mediation with a deadline for him to accept same by 5:00 p.m. on February 1, 2021. (Docket No. 90-10 at ¶ 12). It is uncontested that TowLine's counsel drafted the term sheet/offer which states specifically that Long, as opposed to his counsel, was to "acknowledge acceptance and approval" of the term sheet by that deadline. (Docket Nos. 90-9; 90-10). While Long's former counsel O'Bryan sent a one-word email to defense counsel in the early morning of February 1, 2021 stating only "approve" in response to her email containing the term sheet/offer, there is no evidence that Long received the term sheet and approved it himself prior to its expiration. (*Id.*). Long also affirmatively denies that he granted O'Bryan authorization to settle the case on his behalf and attests that he was not fully informed of his rights as a seaman prior to the alleged oral agreement. (Docket No. 62 at ¶¶ 1-7). The parties concur that Long has not executed the term sheet nor the proposed release tendered to him by TowLine and has not appeared for a Local Rule 17.2 hearing at which time the Court would be required to determine the voluntariness of Long's release of his claims and whether he understands his rights. (Docket Nos. 90; 91; 97; 100; 103). Given the considerable rights afforded to Long as a seaman, his lawyer's inability to settle the case on his behalf under Pennsylvania law absent express authorization, and the lack of any evidence

that Long expressly agreed to release his claims, the Court must conclude that TowLine has failed to show that Long has freely and voluntarily released any claims in this litigation, with a full understanding of his rights.  *See Greene*, 2018 WL 1027542 at *3.

Beyond these considerations, the evidence presented to the Court further reveals that the videoconference mediation did not result in a true "meeting of the minds" as to all of the essential terms necessary to resolve this case and whether Long had a full understanding of his rights. Relevant here,

> the shipowner's maintenance and cure obligation lasts until the seaman is cured or reaches maximum medical improvement ("MMI"). [*Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1079 (3d Cir. 1995).] MMI is the point at which the seaman is either cured, or at which no further improvement in the seaman's medical condition is reasonably expected. [*O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 84 (3d Cir. 1996).]

*Matter of B & C Seafood LLC*, No. CV 18-1560 (RBK/JS), 2020 WL 549406, at *2 (D.N.J. Feb. 4, 2020).  Further, "[t]he adequacy of consideration and the nature of the medical and legal advice available to the seaman are key issues in the analysis of [the seaman's] understanding" of any release. *Greene*, 2018 WL 1027542 at *3; *cf.* W.D. Pa. LCvR 17.2(B) (requiring court to consider medical records and statements of physicians as to nature of injuries and extent of recovery prior to approving any settlement of seaman's claims).  Having considered the evidence of record, it appears to the Court that the purported oral release of claims should not be enforced because there is a clear disconnect between the parties as to whether they have sufficient medical evidence to resolve the case. Long has also received legal advice not to settle the case without such information from both his prior lawyer, O'Bryan and current lawyer, Beckom.

Indeed, the parties clearly dispute whether Long has achieved maximum medical improvement for the injuries he sustained while working for TowLine on June 15, 2018 and

whether he was willing to resolve his case and release his claims without a follow-up consultation with a neurologist to confirm his diagnosis and/or recommend further treatment. (Docket Nos. 90; 91; 97; 100; 103). The prevailing theme throughout Long's correspondence to O'Bryan and staff is that Long believed he would have the opportunity to attend the consultation with a neurologist and follow any recommended course of treatment, including potential surgical procedures, if deemed necessary. (Docket No. 90-7). He consistently objects to signing the release, having it notarized and immediately returned to his counsel. (*Id.*). While O'Bryan initially recommended that Long settle the case, he later argued that the parties had a mutual mistake of fact as to whether Long had achieved maximum medical improvement or not, citing the outstanding neurological consult and the lack of evidence from a physician confirming a physical therapist's diagnosis. (Docket No. 70). Long's new counsel, Beckom, likewise opposes the settlement due to the deficiencies in the medical evidence. (Docket Nos. 42-3; 97; 103). The parties agree that the claims administrator working on behalf of TowLine authorized Long to have a neurological consultation regarding his injuries in 2020 but the same has not yet taken place. (Docket No. 84).

For its part, the term sheet/offer made by Towline is silent as to Long's maximum medical improvement, stating that "TowLine agrees to continue to pay Long maintenance and cure through the date of court approval of the settlement" but does not provide a date by which the settlement must occur nor address the outstanding neurological consult. (*See* Docket No. 90-10). Towline's counsel has also made inconsistent statements as to whether Long has achieved maximum medical improvement. In that regard, Towline's counsel stated on November 24, 2020 that "Mr. Long has not yet reached Maximum Medical Improvement and is currently undergoing physical therapy for his injuries" and that "[t]he parties believe that a full, complete and accurate understanding of Mr. Long's health and medical condition is crucial to an effective, productive, and meaningful

mediation.  The requested extension may allow additional time for Mr. Long to reach Maximum Medical Improvement and facilitate the parties' mediation."  (Docket No. 27 at ¶¶ 11, 12).  However, the proposed release drafted by counsel in February 2021 provides that "[a]s of August 27, 2020, LONG's treating physicians have determined he reached maximum medical improvement for the injuries allegedly sustained on or about June 15, 2018.  Since August 27, 2020, LONG has not sought treatment for any injuries allegedly sustained on or about June 15, 2018."  (Docket No. 41).

All told, the Court agrees with the parties' initial contentions that a "full, complete and accurate understanding" of Long's health and medical condition was necessary prior to them engaging in a fruitful mediation and resolving this case.  (Docket No. 27 at ¶ 12).  Unfortunately, they proceeded to mediate the case without Long having undergone the approved neurological consultation and any recommended follow-up and/or treatment.  In addition, the dispute between the parties as to Long's maximum medical improvement is not meaningfully addressed in the term sheet/offer, leaving an essential term unresolved.  *See El Paso Prod. GOM, Inc.*, No. CV 04-2121, 2008 WL 11509113, at *11 (denying enforcement of settlement as there was no meeting of the minds on an essential term of the agreement).  As there has been no meeting of the minds on these important matters, TowLine's motion must be denied on these additional grounds.

V.    CONCLUSION

Based on the foregoing, TowLine's Renewed Motion to Enforce Settlement [90] is denied. An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: October 26, 2021

cc/ecf: All counsel of record.